**15-1518-cr**
*United States v. Jones*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2015

ARGUED: APRIL 27, 2016
DECIDED: SEPTEMBER 11, 2017
AMENDED: OCTOBER 5, 2017

No. 15-1518-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

COREY JONES,
*Defendant-Appellant.*

————

Appeal from the United States District Court
for the Eastern District of New York.
No. 13 Cr. 00438 – Nicholas G. Garaufis, *District Judge.*

————

Before: WALKER, CALABRESI, and HALL, *Circuit Judges.*

————

Defendant Corey Jones appeals from a sentence entered in the

United States District Court for the Eastern District of New York

(Garaufis, *J.*) following a jury-trial conviction for assaulting a federal officer in violation of 18 U.S.C. § 111. He was sentenced as a career offender principally to 180 months in prison to be followed by three years of supervised release. The primary basis for Jones' appeal is that, in light of the Supreme Court's holding in *Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson I*), New York first-degree robbery is no longer categorically a crime of violence under the force clause of the Career Offender Guideline, U.S.S.G. §§ 4B1.1 and 4B1.2, and that the district court therefore erred in concluding that his prior conviction for first-degree robbery would automatically serve as one of the predicate offenses for a career offender designation.

After oral argument in this matter, the Supreme Court decided *Beckles v. United States*, 137 S. Ct. 886 (2017), which held that the residual clause of the Career Offender Guideline—a second basis for finding a crime of violence—was not unconstitutional. The Court reached this conclusion notwithstanding the government's concession to the contrary in cases around the country that the residual clause, like the identically worded provision of the Armed Career Criminal Act ("ACCA"), was void for vagueness. In light of *Beckles*, we find that New York first-degree robbery categorically qualifies as a crime of violence under the residual clause and therefore need not address Jones' argument based on the force clause. We also find that his sentence is substantively reasonable and

therefore AFFIRM the sentence imposed by the district court and REMAND for further consideration as may be just under the circumstances.

Judge CALABRESI and Judge HALL concur in the opinion of the Court. Judge CALABRESI files a separate concurring opinion, which Judge HALL joins.

————

BRIDGET M. ROHDE, Acting Assistant United States Attorney (Amy Busa, Assistant United States Attorney, *on the brief*), *for* Acting United States Attorney for the Eastern District of New York, *for Appellee.*
MATTHEW B. LARSEN, Assistant Federal Defender, Federal Public Defenders of New York, New York, NY, *for Defendant-Appellant.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Defendant Corey Jones appeals from a sentence entered in the United States District Court for the Eastern District of New York (Garaufis, *J.*) following a jury trial conviction for assaulting a federal officer in violation of 18 U.S.C. § 111. He was sentenced as a career offender principally to 180 months in prison to be followed by three years of supervised release. The primary basis for Jones' appeal is that, in light of the Supreme Court's holding in *Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson I*), New York first-degree robbery is no longer categorically a crime of violence under the force clause

of the Career Offender Guideline, U.S.S.G. §§ 4B1.1 and 4B1.2, and that the district court therefore erred in concluding that his prior conviction for first-degree robbery would automatically serve as one of the predicate offenses for a career offender designation.

After oral argument in this matter, the Supreme Court decided *Beckles v. United States*, 137 S. Ct. 886 (2017), which held that the residual clause of the Career Offender Guideline—a second basis for finding a crime of violence—was not unconstitutional. The Court reached this conclusion notwithstanding the government's concession to the contrary in cases around the country that the residual clause, like the identically worded provision of the Armed Career Criminal Act ("ACCA"), was void for vagueness. In light of *Beckles*, we find that New York first-degree robbery categorically qualifies as a crime of violence under the residual clause and therefore need not address Jones' argument based on the force clause. We also find that his sentence is substantively reasonable and therefore AFFIRM the sentence imposed by the district court and REMAND for further consideration as may be just under the circumstances.

Judge CALABRESI and Judge HALL concur in the opinion of the Court. Judge CALABRESI files a separate concurring opinion, which Judge HALL joins.

## BACKGROUND

On June 21, 2013, Corey Jones was finishing a ninety-two month federal sentence for unlawful gun possession in a halfway house. Jones verbally threatened a staff member, a violation of the rules of the halfway house, and thereby was remanded to the custody of the Bureau of Prisons. Two Deputy U.S. Marshals arrived to take Jones to prison, but Jones resisted the Marshals' efforts to take him into custody. During the ensuing altercation, Jones bit the finger of one of the Marshals, who suffered puncture wounds, necessitating antibiotics and a tetanus vaccine at a hospital. This assault, it turned out, had grave consequences for Jones who was now in all likelihood a "career offender" subject to a greatly enhanced sentence.

A jury convicted Jones of assaulting a federal officer in violation of 18 U.S.C. § 111. In the pre-sentence report, the probation officer calculated a relatively modest base offense level of fifteen for the assault. But the probation officer then determined that Jones was a career offender pursuant to the Career Offender Guideline because, in addition to (1) being over eighteen years of age when he committed the assault and (2) the assault being a crime of violence, (3) he had at least two prior felony convictions of a crime of violence. According to the report, Jones' previous two convictions in New York for first-degree robbery and second-degree assault satisfied the

third element of the test. The probation officer, following U.S.S.G. § 4B1.1, increased the offense level to thirty-two, which, when combined with Jones' criminal history category of VI, resulted in a Guidelines range of 210 to 262 months of incarceration. Because the statutory maximum for assault is twenty years, the effective Guidelines range was 210 to 240 months.

The district court adopted the findings of the pre-sentence report and sentenced Jones to 180 months, or fifteen years, in prison for the assault, to be followed by three years of supervised release. Jones now appeals his sentence, arguing, first, that the district court erred in designating him a career offender and, second, that his sentence is substantively unreasonable.

After oral argument, we published an opinion that resolved Jones' appeal in his favor. The government had conceded that the residual clause was void for vagueness, and we concluded that the force clause could not be applied to Jones for reasons not relevant here. Shortly after our decision was issued, however, we vacated the opinion in order to await the Supreme Court's decision in *Beckles*. *See United States v. Jones*, 838 F.3d 291, 291 (2d Cir. 2016) (mem.).

*Beckles* addressed the constitutionality of the Career Offender Guideline's residual clause, which was in effect at the time of Jones' sentencing but has since been removed and replaced with new

language.[1] Following *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) (*Johnson II*), which held that the residual clause of the ACCA was unconstitutionally void for vagueness, there existed a general belief that the identically worded residual clause of the Career Offender Guideline was similarly unconstitutional, as the government had consistently maintained. In *Beckles*, however, the Court held that the residual clause of the Career Offender Guideline is immune from void-for-vagueness challenges, as are the Guidelines generally. *Beckles*, 137 S. Ct. at 892. After *Beckles*, we invited the parties in this case to provide supplemental briefing as to whether first-degree robbery, as defined in New York, categorically qualifies as a crime of violence under the previously codified residual clause of the Career Offender Guideline.[2] We now address that question.

---

[1] After *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) (*Johnson II*), the Sentencing Commission amended the Guidelines, effective August 1, 2016, to remove the residual clause. The Sentencing Commission noted disagreements among courts of appeals regarding whether the clause was unconstitutionally vague in light of *Johnson II* and whether the Guidelines were susceptible to a vagueness challenge. U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines 4–5 (Jan. 21, 2016), https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/20160121_Amendments_0.pdf. The Commission, without taking a position on the constitutionality of the residual clause, "determined that the residual clause . . . implicates many of the same concerns cited by the Supreme Court in [*Johnson II*]" and removed it "as a matter of policy." *Id.* at 5. The Commission suggested that the amendment would alleviate application difficulties associated with the clause and some of the ongoing litigation and uncertainty resulting from *Johnson II*. *Id.*

[2] The alternative basis for the career offender enhancement—the commission of a "controlled substance offense"—is not relevant here. *See* U.S.S.G. § 4B1.1(a).

**DISCUSSION**

As noted, prior to *Beckles*, Jones' argument centered upon the force clause of the Career Offender Guideline. Aided now by the Supreme Court's holding that the residual clause of the Career Offender Guideline is not void for vagueness, we find that first-degree robbery as defined in New York is categorically a crime of violence under the residual clause and thus we need not address Jones' argument based on the force clause.

In the district court, Jones contested his career offender designation solely on the basis that his first-degree robbery conviction occurred when he was a juvenile. He raised no argument that robbery in New York was not a crime of violence. We accordingly review his present challenge on that ground for plain error. *See United States v. Gamez*, 577 F.3d 394, 397 (2d Cir. 2009) (per curiam). To meet this standard, Jones must establish the existence of (1) an error; (2) "that is plain"; (3) "that affects substantial rights"; (4) and that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alterations and citation omitted). We apply this standard less "stringently in the sentencing context, where the cost of correcting an unpreserved error is not as great as in the trial context." *Id.* We first address point (1): whether the district court committed error of any kind in designating Jones a career offender.

## I.  The Legal Provisions at Issue in This Appeal

This appeal involves the interplay between substantive state criminal law and the federal Sentencing Guidelines ("Guidelines"). The question we face is straightforward: is first-degree robbery in New York, defined in New York Penal Law §§ 160.00 and 160.15, however it may be committed, categorically a crime of violence under the Career Offender Guideline?

A defendant commits robbery in New York when he "forcibly steals property," which the statute defines as "a larceny" involving the use or threatened "immediate use of physical force upon another person."  N.Y. Penal Law § 160.00.  The various degrees of robbery, which carry different penalties, turn upon the presence of particular aggravating factors. *Compare* § 160.05 (defining third-degree robbery), *with* § 160.10 (defining second-degree robbery), *and with* § 160.15 (defining first-degree robbery). First-degree robbery occurs when a defendant commits robbery and during the course of the crime or his immediate flight either "(1) [c]auses serious physical injury to any person who is not a participant in the crime; or (2) [i]s armed with a deadly weapon; or (3) [u]ses or threatens the immediate use of a dangerous instrument; or (4) [d]isplays what appears to be a . . . firearm." § 160.15.

The Career Offender Guideline enhances sentences for defendants in federal court who satisfy certain criteria. *See* U. S.

Sentencing Guidelines Manual § 4B1.1(a) (U.S. Sentencing Comm'n Nov. 2014) (U.S.S.G.). A defendant is a career offender if (1) he is "at least eighteen years old at the time [he] committed the instant offense of conviction"; (2) his "instant offense of conviction is a felony that is . . . a crime of violence"; and (3) he "has at least two prior felony convictions of . . . a crime of violence." *Id.*

At the time of Jones' sentencing in 2015,[3] as mentioned earlier, there were two separate clauses defining "crime of violence." *See* § 4B1.2(a). The first definition, the "force clause," specifies that a crime of violence is a felony "that has as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a)(1). The second clause enumerates several offenses that qualify as crimes of violence—"burglary of a dwelling, arson, [] extortion[, or] involves use of explosives"—before ending with the "residual clause," which specifies that a crime of violence also includes any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." § 4B1.2(a)(2) (2015).

---

[3] With only one exception not relevant here, district courts are to sentence defendants pursuant to the version of the Guidelines in effect on the date of sentencing. *See* 18 U.S.C. § 3553(a)(4)(A); *see also Beckles*, 137 S. Ct. at 890 & n.1. Accordingly, all references to the Guidelines are to the November 2014 version, which was in effect when Jones was sentenced on April 24, 2015.

**II.    The Categorical and Modified Categorical Approaches**

The Supreme Court has set forth the methodology for determining whether a state conviction qualifies as a predicate offense for a federal sentence enhancement. There are two possible methods: the categorical approach and the modified categorical approach. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013).

The categorical approach is confined to an examination of the legal elements of the state criminal statute to determine whether they are identical to or narrower than the relevant federal statute. *See id.* If so, a conviction under the state statute categorically qualifies as a predicate offense. *See id.* However, if the state statute criminalizes *any* conduct that would not fall within the scope of either the force clause or the residual clause, a conviction under the state statute is not categorically a crime of violence and cannot serve as a predicate offense. *See id.*

Under the categorical approach we must confine our inquiry to the legal elements of the state statute without at all considering the facts of the underlying crime. The Supreme Court has set forth two reasons for this. First, the text of the Career Offender Guideline, like that of the ACCA, explicitly refers to convictions rather than conduct. *See Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016). The Career Offender Guideline directs the sentencing court to consider whether the offender "has at least two prior felony convictions of . . .

a crime of violence," U.S.S.G. § 4B1.1(a), which indicates that "the sentencer should ask only about whether the defendant had been convicted of crimes falling within certain categories, and not about what the defendant had actually done," *Mathis*, 136 S. Ct. at 2252 (internal quotation marks and citation omitted).

Second, by focusing upon the legal elements, rather than the facts of the offense, the sentencing court "avoids unfairness to defendants." *Id.* at 2253. "Statements of 'non-elemental fact' in the records of prior convictions [such as the precise manner in which the crime was committed] are prone to error precisely because their proof is unnecessary." *Id.* (citation omitted). Defendants therefore may have little incentive to ensure the correctness of those details of earlier convictions that could later trigger the unforeseen career offender enhancement.

Occasionally, however, a state statute will criminalize multiple acts in the alternative. Where this occurs, courts may employ what is known as the modified categorical approach. But the Supreme Court has emphasized that the modified categorical approach is available only where the state statute is "divisible" into separate crimes. *Descamps*, 122 S. Ct. at 2281-82; *see also Flores v. Holder*, 779 F.3d 159, 165-66 (2d Cir. 2015). A statute is divisible if it "list[s] *elements* in the alternative, and thereby define[s] multiple crimes" but is not divisible if it instead lists "various factual *means* of

committing a single element." *Mathis*, 136 S. Ct. at 2249 (emphases added).

When a statute is divisible, a court employing the modified categorical approach can then peer into the record to see which of the multiple crimes was implicated. But the court may discern this only from "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* Once that determination is made, the modified categorical approach is at an end and the court must apply the categorical approach to the legal elements of the appropriate criminal offense. *Id.*

New York's first-degree robbery statute is divisible and therefore subject to the modified categorical approach. New York defines robbery as "forcibly stea[ling] property." N.Y. Penal Law §§ 160.00–.15. There are four categories of first-degree robbery, depending on whether: the perpetrator "(1) [c]auses serious physical injury to any person who is not a participant in the crime; or (2) [i]s armed with a deadly weapon; or (3) [u]ses or threatens the immediate use of a dangerous instrument; or (4) [d]isplays what appears to be a . . . firearm." § 160.15; *see also Flores*, 779 F.3d at 166 (analyzing the divisibility of New York's first-degree sexual abuse statute).

In the typical case under the modified categorical approach we would examine certain documents in the record to ascertain which of the four crimes Jones committed. In this instance, however, we are stymied and unable to employ the modified categorical approach because no one has produced the record. Where this occurs, however, we are not at a complete loss. We instead look to "the least of [the] acts" proscribed by the statute to see if it qualifies as a predicate offense for the career offender enhancement. *See Johnson I*, 559 U.S. at 137. If so, Jones's first-degree robbery conviction can serve as a predicate offense for the enhancement regardless of which first-degree robbery subpart provided the basis for his conviction. *See id.*

Jones identifies the act of "forcibly stealing property" while "armed with a deadly weapon" as being the "least of the acts" in the statute, and we agree. *See* N.Y. Penal Law § 160.15(2). The question we must answer, therefore, is whether a defendant who perpetrates such an act commits a crime of violence within the meaning of the residual clause of the Career Offender Guideline.

In the opinion we issued and then withdrew, prior to *Beckles*, we addressed only the force clause. We did not concern ourselves with whether Jones' first-degree robbery conviction qualified as a crime of violence under the Career Offender Guideline's residual clause because, consistent with the government's concession on that

point, we had previously held that the residual clause was unconstitutional in light of *Johnson II. See United States v. Welch*, 641 F. App'x 37, 42-43 (2d Cir. 2016) (summary order). Now that the Supreme Court has held in *Beckles* that the Guidelines, regardless of whatever other defects they may have, cannot be void for vagueness, 137 S. Ct. at 890, we are free to assess whether New York first-degree robbery categorically qualifies as a crime of violence under the residual clause.

**III.    Whether Jones' Conviction Qualifies as a Crime of Violence Under the Residual Clause**

We have little difficulty concluding that the "least of the acts" of first-degree robbery satisfies the definition of the Guidelines' residual clause. The least of the acts, both sides agree, is "forcibly stealing property" while "armed with a deadly weapon." The residual clause provides that a crime of violence includes any offense that " involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). Plainly, a robber who forcibly steals property from a person or from his immediate vicinity, while armed with a deadly weapon, engages in "conduct that presents a serious potential risk of physical injury to another." *See id.*

If there were any misgiving on this score, it is removed by the commentary provision to the Guidelines in effect at the time of

Jones' sentencing, which specifically enumerated robbery as a crime of violence.[4] § 4B1.2 cmt. n.1.

Commentary provisions must be given "controlling weight" unless they: (1) conflict with a federal statute, (2) violate the Constitution, or (3) are plainly erroneous or inconsistent with the Guidelines provisions they purport to interpret. *Stinson v. United States*, 508 U.S. 36, 45 (1993). Jones has not identified any such flaws nor do we discern any. Where the basis for categorizing a prior conviction as a crime of violence is that the offense is specifically enumerated as such in the Career Offender Guideline or its commentary, we undertake the categorical approach by comparing the state statute to the generic definition of the offense. *See United States v. Walker*, 595 F.3d 441, 445-46 (2d Cir. 2010).

That there is consensus in the criminal law as to what constitutes robbery thus further convinces us that the least of the acts constituting New York first-degree robbery, *i.e.*, "forcibly

---

[4] The relevant commentary provision specified in full:

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as 'crimes of violence' if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 cmt. n.1 (2015).

stealing property" while "armed with a deadly weapon," is a crime of violence under the residual clause. As we have noted, "all fifty states define robbery, essentially, as the taking of property from another person or from the immediate presence of another person by force *or* by intimidation." *Id.* (emphasis in original). Indeed, it would seem that, pursuant to the commentary to the former residual clause, robbery of *any degree* in New York qualifies as a crime of violence.

Jones contends nonetheless that New York's robbery statute is broader than the generic definition. He argues, specifically, that the generic definition of robbery requires the use or threat of force in the process of asserting dominion over the property that is the subject of the offense, whereas the New York statute would be violated by a robber who uses or threatens force after assuming dominion of the property. We disagree.

The specific language of the New York robbery statute that Jones points to is that "forcible stealing" consists of (1) the "use[] or threat[] [of] immediate use of physical force upon another person" (2) "in the course of committing a larceny" (3) for the purpose of either "preventing or overcoming resistance to the taking of the property *or to the retention thereof immediately after the taking*" or "[c]ompelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in

the commission of the larceny." N.Y. Penal Law § 160.00 (emphasis added).

The generic definition of robbery, however, is broader than Jones acknowledges. It is true that the common law definition confines robbery to the use or threat of force before, or simultaneous to, the assertion of dominion over property and therefore comports with Jones' argument. *See, e.g.*, Wayne LaFave, 3 *Substantive Criminal Law* § 20.3(e) (2d ed. Supp. 2016); Charles E. Torcia, 4 *Wharton's Criminal Law* § 463 (15th ed. Supp. 2016). But a majority of states have departed from the common law definition of robbery, broadening it, either statutorily or by judicial fiat, to also prohibit the peaceful assertion of dominion followed by the use or threat of force. *See, e.g.*, LaFave § 20.3(e); Torcia § 463; *State v. Moore*, 274 S.C. 468, 480-81 (S.C. Ct. App. 2007) (collecting state statutes and judicial decisions that have departed from the common law definition of robbery). Indeed, the Model Penal Code, which we relied upon in *United States v. Walker*, 595 F.3d at 446, is often cited as the authority for expanding the definition of robbery in this manner, *see* LaFave § 20.3(e), because it specifies that robbery includes conduct where the initial use or threat of force occurs "in flight after the attempt or commission [of the theft]," Model Penal Code § 222.1. As a result, this broader definition has supplanted the common law meaning as the generic definition of robbery. *See Taylor v. United States*, 495 U.S.

575, 598 (1990) (specifying that the "generic" definition of a crime is the "sense in which the term is now used in the criminal codes of most states").

Moreover, New York places two restrictions on the temporal relationship between the underlying theft and the use or threat of force that buttress the conclusion that its definition of robbery falls within the generic definition of the offense: (1) force must be "in the course of committing a larceny," *i.e.*, a theft, and (2) force must occur during "immediate flight" after the taking for purposes of retaining the property. *See* N.Y. Penal Law § 160.00. Jones does not provide, and we are not aware of, any authority that the New York statute criminalizes the use of force after the robber has successfully carried the property away and reached a place of temporary safety.

For all of the foregoing reasons, we easily conclude that New York's definition of robbery necessarily falls within the scope of generic robbery as set forth in the commentary to U.S.S.G. § 4B1.2(a). Because Jones' argument that first-degree robbery is not necessarily a crime of violence within the meaning of U.S.S.G. § 4B1.2(a) under the categorical approach is without merit, the district court did not commit error, much less plain error, in sentencing Jones as a career offender.

**IV.    The Substantive Reasonableness of Jones' Sentence**

Finally, we reject Jones' argument that his sentence of 180 months is substantively unreasonable. In assessing the substantive reasonableness of a sentence for abuse of discretion, we review questions of law *de novo* and questions of fact for clear error. *United States v. Bonilla*, 618 F.3d 102, 108 (2d Cir. 2010) (citation omitted). We may not substitute our own judgment for that of the district court and can find substantively unreasonable only those sentences that are so "shockingly high, shockingly low, or otherwise unsupportable as a matter of law" that affirming them would "damage the administration of justice." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). In the "overwhelming majority of cases," a sentence within the Guidelines range will "fall comfortably within the broad range of sentences that would be reasonable." *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (citation omitted).

Jones' Guidelines range was 210 months to 262 months, the top of which was lowered to 240 months, the statutory maximum for assault of a federal officer. The court imposed a sentence of 180 months, or fifteen years, which, while substantial, was considerably below the Guidelines range.

The primary thrust of Jones' argument is that a fifteen-year sentence is substantively unreasonable for an assault of a federal

officer that consists solely of biting the victim's finger and in which the injury was not permanent. Jones' argument, however, misses the mark. The district court specified a combination of reasons for the fifteen-year sentence, including: (1) the need to encourage respect for the law and cooperation with law enforcement officials who are attempting to carry out their lawful duties; (2) Jones' substantial prior criminal history, consisting of seven prior convictions, two of which, in addition to the assault of the officer, resulted in him being designated a career offender; and (3) Jones' substantial history of misconduct while incarcerated, including twenty-seven occasions upon which he was disciplined.

Jones attempts to compare his case to instances where defendants were convicted of violating the same statute, received lower sentences, and arguably committed more egregious conduct. That defendants convicted of similar or even more serious conduct received lower sentences, however, does not render Jones' sentence substantively unreasonable. Plainly, the district court also relied upon Jones' criminal and prison history, including his career offender status, which distinguishes this case from those to which he refers. Under these circumstances, we cannot say that Jones' sentence was substantively unreasonable.

**CONCLUSION**

For the reasons stated above, we AFFIRM the sentence imposed by the district court and REMAND for further consideration as may be just under the circumstances.

GUIDO CALABRESI, *Circuit Judge*, with whom Peter W. Hall, *Circuit Judge*, joins, concurring:

I believe Judge Walker's opinion states the law correctly, and I concur in its reasoning and in its result. I write separately because that result, while mandated by the law, seems to me to be highly unjust, and little short of absurd. To explain why I think so, let me give the facts and procedural history of this case in a way that is slightly different from the majority opinion—which, however, is also correct, and in which, as noted above, I join, fully.

**A. Background**

Corey Jones is a now-39-year-old man with an I.Q. of 69.[1] While at a residential reentry center ("RRC"), finishing a nearly eight-year sentence for felony possession of a firearm, (he was five months' shy of his scheduled release), Jones allegedly grumbled a threat and was insolent to a staff member. The staff members called the federal marshals to take custody of Jones, who resisted arrest. The marshals conceded that, during his resistance, Jones never stepped towards, kicked, or punched them. Nonetheless, as they were trying to lower his head to the ground, the hand of the marshal who was apprehending

---

[1] This I.Q. score is considered to be in the "mentally deficient" range of intellectual functioning, below the generally accepted range for "intellectual disability," which is an I.Q. score of approximately 70-75. *See* Dist. Ct. Dkt. 46–1 at 5, Jones Sentencing Memorandum, Exhibit A, "Sentencing Memo Letter of Dr. Sanford L. Drob", at 5.

Jones slipped down Jones' face, and Jones bit him, causing the finger to bleed. Shortly thereafter, Jones said, "I give," and was arrested and taken away. The marshal provided a sworn affidavit indicating that he suffered no loss because of the injury and that he did not request damages. At trial, the bite was described by the prosecutor as "not the most serious wound you'll ever see."

Pursuant to a single-count indictment for assaulting a federal officer, Jones was found guilty in violation of 18 U.S.C. § 111(a)(1)–(b). Under the Guidelines as they were then calculated, and as described in Judge Walker's opinion, Jones faced a sentence of between 210–240 months, (seventeen-and-one-half to twenty years), with the high end being the statutory maximum. This calculation was based on Jones' designation as a career offender, a status that was triggered by two earlier convictions: (i) an assault in which the then twenty-year-old Jones shot a man in the leg, which later needed to be amputated, and (ii) a conviction for first-degree robbery in New York, a crime Jones committed when he was sixteen years old.[2]

The district court, applying what it believed was the law of this circuit as it stood at that time, found that Jones' robbery conviction constituted a "crime of

---

[2] A defendant's youthful offender adjudications are, for the purposes of the relevant Guidelines calculations, deemed "'adult convictions' [where the defendant] (1) pleaded guilty to both felony offenses in an adult forum and (2) received and served a sentence of over one year in an adult prison for each offense." *See United States v. Jones*, 415 F.3d 256, 264 (2d Cir. 2005).

2

violence" under the categorical approach to the Sentencing Guidelines. *See*

*United States v. Spencer*, 955 F.2d 814, 820 (2d Cir. 1992) (holding that, under the

law of New York, the crime of attempted third-degree robbery constitutes a

"crime of violence" for the purposes of the "force clause" of the Sentencing

Guidelines), *abrogated by Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson I*);

*see also United States v. Reyes*, 691 F.3d 453 (2d Cir. 2012) (per curiam).[3] Given this

---

[3] A crime of violence, along with other factors, serves as a predicate requiring a district court to sentence a defendant as a "career offender" subject to an increased sentencing spectrum. *See* U.S. Sentencing Guidelines Manual § 4B1.1(a) (U.S. Sentencing Comm'n Nov. 2014) (U.S.S.G.) (defining "career offender" as a defendant who is (1) "at least eighteen years old at the time [he] committed the instant offense of conviction;" (2) his "instant offense of conviction is a felony that is . . . a crime of violence;" and (3) he "has at least two prior felony convictions of . . . a crime of violence.") .

As described in Judge Walker's opinion, there were, at the time of Jones' sentencing, two clauses in the Sentencing Guidelines, either of which could define a "crime of violence." These two clauses are referred to as the "force clause," and the "residual clause." The "force clause" specifies that a crime of violence is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). The "residual clause" comes at the end of a second set of enumerated offenses, and provides that a crime of violence also includes any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id*. § 4B1.2(a)(2).

In *Spencer*, we had held that, under the force clause, third-degree robbery, as defined by New York law, was a crime of violence. After the Supreme Court's analysis of the force clause in *Johnson I*, however, we held that battery, as defined by the state of Florida, was not a crime of violence. *Reyes*, 691 F.3d 453. In *Reyes*, we noted *Johnson I*'s dictate that, to constitute a "crime of violence" under the

3

holding, and because Jones' prior conviction for assault certainly constituted a crime of violence, the district court determined that the career offender status applied. Absent Jones' designation as a career offender, his Guidelines sentence range would have been between 36 and 48 months (or three to four years), instead of the range of 210-240 months, or the seventeen-and-one-half years to twenty years that the court deemed applicable.

Departing downward significantly from the Guidelines, Judge Garaufis sentenced Jones to fifteen years.

**B. Doctrinal Developments and Impact on Sentencing**

Judge Garaufis' opinion rested on his interpretation of the application of the force clause to New York State's definition of robbery. Because Judge Garaufis was of the view that first-degree robbery was a crime of violence under the force clause even after *Johnson I*, Judge Garaufis did not address the

categorical approach, a crime must involve the "use of physical force," and found that battery did not meet that definition. *Id*. at 460. Even after *Spencer*, it was an open question whether first-degree robbery was a crime of violence. After *Reyes*, that question depended on whether the use of physical force was, indeed, present in the New York definition of that crime.

Judge Garaufis held that the reasoning of *Spencer* meant that first degree robbery was a crime of violence. In our former, withdrawn opinion, we held, for reasons similar to those given in *Reyes*, that first-degree robbery was not. *Cf.*, *United States v. Yates*, No. 16-3997, 2017 WL 3402084 (6thCir. Aug 9, 2017) (finding in analogous circumstances that the force clause does not apply). All of that analysis, however, was with respect to the force clause, not the co-extant – and here essential – residual clause.

4

additional possible determinant of a crime of violence now at issue before us: the "residual clause."

After Jones' initial sentencing, but before we heard Jones' appeal, the Supreme Court found language in the Armed Career Criminal Act ("ACCA") which was identical to the language used in the residual clause of the Guidelines—the lynchpin clause undergirding the authority of Jones' current sentence—to be unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) (*Johnson II*). Subsequent to *Johnson II,* most federal courts of appeals to decide the issue found that, given the Supreme Court's decision, the residual clause was also unconstitutionally vague. *See United States v. Pawlak*, 822 F.3d 902, 907-11 (6th Cir. 2016); *United States v. Hurlburt*, 835 F.3d 715, 725 (7th Cir. 2016); *United States v. Calabretta*, 831 F.3d 128, 137 (3d Cir. 2016); *United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015); *but see United States v. Matchett*, 802 F.3d 1185, 1193-96 (11th Cir. 2015).

As a result—with the application of the force clause to Jones in doubt as a result of *Johnson I*, and with the residual clause struck down across several circuits as a result of *Johnson II*—any number of defendants were found *not* to have committed crimes of violence, either as a matter of first instance, or on appeal, for purposes of determining their career offender status under the Guidelines. Accordingly, they were resentenced (or sentenced in the first

5

instance) to lower sentences. We are told the government is not challenging these lower sentences.

**C. Removal of the Residual Clause from the Guidelines**

The Sentencing Commission, in light of the decisions of several courts of appeals grounded on the Supreme Court's decision in *Johnson II*, revised the Guidelines and removed the residual clause as a basis for future sentencing. (*See* Majority Opinion, n.1).

**D. Procedural History in this Court**

We heard Jones' appeal after *Johnson II*, and we held: (i) that, under *Johnson I*, the force clause was not applicable to him; (ii) (like several of our sister circuits) that the other possible ground for Jones' career offender status, the residual clause, was unconstitutional, pursuant to *Johnson II*; and, (iii) that, as a result, Jones' robbery conviction did not qualify as a predicate violent offense under the Guidelines. We therefore ordered Jones' sentence vacated and sent the case back for resentencing. We expressly instructed the district court that, in resentencing Jones, it should not treat him as a career offender.

Before the district court resentenced Jones, however, the Supreme Court granted *certiorari* in *Beckles v. United States*, 137 S. Ct. 886 (2017), to consider whether the language that, in *Johnson II* it had deemed unconstitutionally vague *in a statute*, was also void for vagueness when the identical language was

6

employed in the Guidelines. In view of the Supreme Court's action, we withdrew our opinion, and suspended resentencing pending the *Beckles* decision.

Interestingly, at least one district court, in an independent case, had already granted a motion for resentencing in light of our now-recalled decision. *Miles v. United States*, No. 11-cr-581, 2016 WL 4367958 (S.D.N.Y. Aug 15, 2016).

In *Beckles*, the Supreme Court held the relevant clause of the Guidelines *not* to be unconstitutionally vague.[4] Hence, the clause remained applicable to cases like the one before us.

As a result, we are bound to consider Jones' earlier convictions on the basis of the revived (but no longer extant, since it has been removed by the Sentencing Commission) residual clause. Under that clause, we today correctly find that Jones' robbery conviction constituted a crime of violence and, as such, served as a predicate offense which—together with his assault convictions—categorically renders Jones a career offender. He was, therefore, correctly subject to the

---

[4] The Supreme Court held as it did based on the history of discretion in sentencing before the Guidelines and the discretionary nature of the Guidelines themselves. My concern with our holding today does not dispute the correctness of the Court's decision. That the Court's decision was unexpected, however, cannot be doubted. Between *Johnson II* and *Beckles*, courts of appeals, prosecutors, and the Sentencing Commission took actions which assumed a different result. Indeed, the Justice Department had taken the position that *Johnson II* governed *Beckles*, and the Supreme Court had to appoint special counsel to present the opposite view. It is that unexpectedness and what happened between *Johnson II* and *Beckles* that is, in significant part, responsible for making today's result so troubling to me.

sentencing guidelines of 210–240 months on the basis of which the district court—albeit, perhaps incorrectly relying on the force clause rather than the residual clause— had imposed his original sentence of fifteen years.

Because that sentence was correctly based on the Guidelines as we now hold they stood when the district court sentenced Jones, we now affirm that sentence. We also hold that, given the applicable Guidelines, the sentence imposed—which departed significantly downward from these applicable Guidelines—was not substantively unreasonable.

**E. DISCUSSION**

I agree that the sentence is not substantively unreasonable; but I believe the result to be close to absurd.

Jones was about to be released when he committed a crime whose full nature and significance the district court is better able to evaluate than we. The district court decided on a fifteen-year sentence. Perhaps this sentence was based on its view of Jones' prior criminal activity, and on Jones' dangerousness. Perhaps the sentence, departing downward notably from the Guidelines, was, however, imposed because the district court believed that, given those Guidelines, it had gone down as much as it felt it reasonably could.

The fact is that we do not know what sentence the district court would have deemed appropriate if Jones had been subject to different Guidelines. Had

our opinion come down slightly earlier, as did those of most other circuits dealing with similar issues, Jones would have been resentenced pursuant to a substantively lower Guidelines range. We would, then, know what sentence would have seemed appropriate to the district court in those circumstances. Had that sentence been lower—as it apparently was in any number of other cases in other circuits—the Government apparently would not have objected to it. Had Jones committed his crime under the currently existing Guidelines, (*i.e.*, in which the residual clause has been removed by the Sentencing Commission), and assuming that we would have read the force clause not to apply (as we did in our earlier, now-retracted opinion), the district court would have had, again, the opportunity to gauge Jones' degree of dangerousness under a very different set of Guidelines than those we, today, finally conclude it correctly applied at sentencing.

Because we (advisedly) withdrew our earlier opinion in light of the Supreme Court's grant of *certiorari* in *Beckles*, and because of the Supreme Court's ultimate decision in *Beckles*, I agree that we now are bound to affirm Jones' original sentence. This means that, as a result of timing quirks (his appeal to us was slightly too late, leading to our decision to pull our earlier opinion), Jones receives a very, very high sentence in contrast with almost every similarly situated defendant.

9

What is more—and this may be the true source of my sense of absurdity—there appears to be no way in which we can ask the district court to reconsider the sentence it ordered in view of the happenstances that have worked against Jones, *and* in view of its assessment of Jones' crimes and of its downward departure.

Were this a civil case, there would be any number of ways of letting the lower court revisit matters.[5] But, as far as I have been able to discern, there is no way for us to send this back to the district court and ask it to tell us what I believe should determine Jones' sentence:

In the light of sentences that other similarly guilty defendants have received, and in the light of Jones' own situation, *both of which you, as a district judge, are best suited to determine*, what is the sentence that you deem appropriate in this case?

I find our inability to learn this to be both absurd and deeply troubling. I believe our affirmance is correct, and that we can do no other. I hope, however,

---

[5] For example: Federal Rule of Civil Procedure 60(b)(6) provides a court with the power to entertain a motion to relieve a party from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). To similar effect, Rule 60(d) states that a court has the power to "entertain an independent action to relieve a party from a judgment, order, or proceeding." *Id.* 60(d)(1).

that somewhere, somehow, there exists a means of determining what would, in fact, be an appropriate sentence for Jones. [6]

---

[6] After our opinion was issued, it was called to our attention that 28 U.S.C. § 2106 permits affirmances and remands for further proceedings in the interest of justice, and has been applied in criminal situations, *United States v. Guiliano*, 644 F.2d 85, 89 (2d Cir. 1981); *United States v. Robin*, 553 F.2d 8 (2d Cir. 1977) (en banc); *see also United States v. Algahaim*, 842 F.3d 796, 800 (2d Cir. 2016) (affirming a sentence but remanding for further consideration of that sentence, without making express reference to § 2106). We have now altered our disposition in this case to that effect. This altered disposition may permit the district court to reconsider the sentence imposed and thereby go a long way to avoid the absurdity, which this opinion has suggested.